# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>iPhone cellular telephone Model XS Max, IMEI #357276098919447 located at U.S. Postal Service OIG, 1801 Brook Road, Richmond Virginia | ) ) ) ) ) ) ) Case No. 2:20sw 146 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

iPhone cellular telephone, Model XS Max, IMEI #357276098919447 located in the U.S. Postal Service OIG, 1801 Brook Road, Richmond Virginia

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 846 and 841(a)(1) | Conspiracy to Distribute and Possess with Intent to Distribute Marijuana |
| 18 USC §§ 201(a) and (b) | Bribery of Public Officials |

The application is based on these facts:
See Attached Affidavit.

☐ Continued on the attached sheet.
☐ Delayed notice of ___ days *(give exact ending date if more than 30 days: ___)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA

*/s/ Sherrie Capotosto, AUSA*
*Printed name and title*

*Jessica Farrell*
Applicant's signature

Jessica R. Farrell, Special Agent, U.S. Postal Service OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: July 1, 2020

City and state: Norfolk, VA

*Robert J. Krask*, U.S. Magistrate Judge
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jessica R. Farrell, being duly sworn, hereby depose and state:

1. I have been employed as a Special Agent for the United States Postal Service, Office of Inspector General (USPS OIG) since July 2014. I am currently assigned to the Capital Metro Area Field Office, Richmond District, and domiciled in Chesapeake, Virginia. I am responsible for investigating narcotics violations involving Postal Service employees. I have completed 12 weeks of basic investigative training, which included various aspects of federal law enforcement training related to the investigation of narcotics related offenses. I have also completed the USPS OIG's narcotics training course. Prior to joining the USPS OIG, I was employed as a Special Agent for the Naval Criminal Investigative Service (NCIS) from November 2005 to July 2014. From 2008 to 2012, I worked in a special operations unit focusing primarily on narcotics investigations. Additionally, I completed an advanced training course at the federal law enforcement training center focused on undercover operations and narcotics investigations. Throughout my tenure as a law enforcement officer, I have participated in numerous narcotics related operations, search warrants, and arrests.

2. This affidavit is being submitted in support of an application for a search warrant for the electronic content maintained within a cellular/wireless telephone, specifically described as: **iPhone Model XS Max, IMEI #357276098919447**, seized from **Gary TURNER,** U.S. Postal Service City Carrier, while he was temporarily detained after delivering one parcel of marijuana to **Michael Rorrer CARTER**.  The wireless/cellular telephone is currently in the custody of the U.S. Postal Service, Office of Inspector General, located at 1801 Brook Road, Richmond, Virginia 23232.

3. Based upon the information summarized in this application and affidavit, I have reason to believe that evidence of violations of 21 U.S.C. §§ 846 and 841(a)(1) - Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, and 18 U.S.C. §§ 201 (a) and (b) - Bribery of Public Officials, exists in electronic format maintained in this cellular/wireless telephone described as **iPhone Model XS Max, IMEI #357276098919447.**

4. The statements contained in this affidavit are based on information provided in part by other law enforcement officers and on my experience and background. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of 21 U.S.C. § 846 exists within the electronic content of this cellular/wireless telephone.

5. As a result of my training and experience, I am familiar with how marijuana is used, and the typical distribution and trafficking methods used by marijuana distributors. In addition, I am also familiar with the typical methods used by marijuana traffickers to "courier" and clandestinely transport the illegal product and proceeds of the illegal activity.

6. Based upon my training and experience, as well as the knowledge and experience of other investigators assisting me, I am aware that it is a common practice for drug traffickers to maintain on their persons or in their residences records, electronic and traditional paper records, relating to their drug trafficking activities. Because drug traffickers in many instances will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past, "pay," and for expected, "owe," as to the trafficker's

supplier. Additionally, drug traffickers must maintain telephone listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

7. Drug traffickers will commonly utilize multiple wireless/cellular telephones and frequently destroy or switch SIM cards within the phones in an effort to thwart law enforcement. SIM cards are small printed circuit boards that must be inserted in any mobile phone when signing on as a subscriber. It contains subscriber details, security information and memory for a personal directory of numbers. The SIM card also stores data that identifies the caller to the network service provider.

8. It is also common practice for traffickers to conceal at their residences large sums of money, either the proceeds from drug sales or monies to be used to purchase controlled substances. In this connection, drug traffickers typically make use of wire transfers, cashier's checks, and money orders to pay for controlled substances, usually coordinated through the use of difficult to trace prepaid cellular telephones. Evidence of such financial transactions, or coordination to conduct these transactions, would also typically be maintained in residences or electronic devices close to the subject, with the ability to be protected by a pass code.

**Details of the Investigation:**

9. In October 2019, the investigative team comprised of Special Agents from USPS OIG, and Inspectors from U.S. Postal Inspection Service (USPIS), began investigating Gary TURNER, USPS City Carrier in Norfolk, Virginia, for possible employee collusion. The OIG regularly reviews USPS databases for large numbers of suspected drug parcels destined for single USPS Letter Carrier routes, which can be an indication of carrier collusion in drug conspiracies.

10. Beginning in May 2019, numerous suspected drug parcels destined for TURNER's route were identified. Covert cameras installed in TURNER's Long-Life Vehicle (LLV), as well as video surveillance obtained from a private parking garage at 201 West 21st Street in Norfolk (the first stop on TURNER's route) revealed TURNER meeting with a white male at various locations along his route. Law enforcement database inquiries identified the individual as Michael R. CARTER of Portsmouth, Virginia. On numerous occasions since October 2019, TURNER was observed on surveillance video providing CARTER with parcels suspected to contain narcotics. In exchange, CARTER was observed providing TURNER with white envelopes containing various sums of cash. TURNER was often observed communicating on his cell phone immediately before and after delivering the parcels to CARTER. Telephone toll records obtained from AT&T and Sprint revealed approximately twenty-seven (27) incoming and outgoing calls between CARTER and TURNER from July 12, 2019, to March 16, 2020.

11. On April 29, and May 6, 2020, two parcels originating in Los Angeles, California, and destined for a residence in the 2600 block of Granby Street in Norfolk were identified. A review of surveillance footage revealed that on April 29, 2020, TURNER scanned an image on his cell phone with his parcel scanner while parked in front of the recipient address but did not deliver a parcel to the address. Later that day, TURNER was observed providing CARTER with a parcel along his route. On May 6, 2020, TURNER was observed scanning a parcel while parked in front of the recipient address but did not deliver the parcel. Later that day, TURNER was observed on video handing a parcel to CARTER along his route.

12. On May 21, 2020, an analysis of parcels destined for TURNER's route identified a parcel also destined for the same residence in the 2600 block of Granby Street. The parcel matched the address and description of previous parcels believed to have been handed off to CARTER in

exchange for cash. The parcel was subsequently seized from the mail stream and a federal search warrant was obtained to identify the contents of the parcel.

13. On May 26, 2020, the parcel was opened and was found to contain approximately three pounds, five ounces of presumptive positive marijuana.

14. On June 16, 2020, three additional parcels suspected to contain marijuana were destined for TURNER's route. On June 17, 2020, the investigative team conducted surveillance of TURNER as he delivered two suspected narcotics parcels to CARTER in the parking garage of 201 West 21st Street, a distance away from the intended delivery address. CARTER was then observed returning to his residence.

15. On June 18, 2020, the investigative team and the Norfolk Police Department (NPD) conducted surveillance of TURNER as he delivered the third parcel to CARTER near the intersection of Omohundro Avenue and West 22nd Street in Norfolk, a distance away from the intended delivery address. NPD officers approached CARTER while he was parked in front of Dollar Tree, 400 West 21st Street, in Norfolk. CARTER admitted to being in possession of marijuana and was subsequently placed under arrest. A search of CARTER's vehicle revealed a .380 semiautomatic pistol and a small backpack containing $11,769 in U.S. currency, in addition to approximately three pounds of presumptive positive marijuana located inside the parcel previously received from TURNER. A state search warrant executed on CARTER's residence revealed additional quantities of suspected marijuana, drug paraphernalia and several firearms.

16. Later on June 18, 2020, the investigative team stopped and temporarily detained TURNER while he was delivering mail on his route. TURNER was placed in U.S. Postal Inspector Tom Sylvester's law enforcement vehicle. Inspector Sylvester and I conducted a post Miranda interview of TURNER. TURNER admitted to receiving money in exchange for the parcels he

delivered to CARTER. TURNER admitted that CARTER may have called him on his cell phone, but TURNER denied ever contacting CARTER. TURNER's iPhone was seized for a subsequent search warrant application. TURNER was released to Postal Service management at the scene and placed on immediate suspension.

17. Wherefore, your affiant requests the issuance of a search warrant authorizing United States Postal Service, Office of Inspector General Special Agents, with assistance from other law enforcement officers as needed, to search the wireless/cellular telephone described as follows: **iPhone Smartphone, Model XS Max, IMEI #357276098919447** for the evidence described above and items listed in greater detail in Attachment A and for the seizure and safekeeping of said evidence, subject to any subsequent order of the court having jurisdiction thereof.

*Jessica Farrell*
Jessica R. Farrell
Special Agent USPS OIG

Seen and Reviewed:

_____/s/_____
Sherrie S. Capotosto
Assistant United States Attorney

Subscribed to and sworn telephonically before me this  1st  day of July, 2020.

UNITED STATES MAGISTRATE JUDGE
UNITED STATES MAGISTRATE JUDGE
At Norfolk, Virginia

6

## ATTACHMENT A
### Evidence to be Seized

1. All records, contained in one **iPhone cellular telephone, Model XS Max, IMEI #357276098919447**, that relate to violations of 21 U.S.C. §§846 and 841(a)(1) Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, and 18 U.S.C. §§ 201(a) and (b), Bribery of Public Officials, including:

    (a) Any address books, phone books, names and lists of names, addresses, phone numbers;

    (b) Any call logs created by the phone;

    (c) Any record of text messages;

    (d) Any electronic data to include, digital photographs, videos, or audio recordings;

    (e) Any subscriber or owner information;

    (f) Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones; and

    (g) Any geo-location meta data associated with photographs and video images.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.